C. H. Swift & Sons, Inc., Petitioner, *v*. Commissioner of Internal Revenue, Respondent.

Docket No. 4806.   Promulgated July 31, 1928.

*Benjamin Mahler, Esq.*, and *Henry P. Keith, Esq.*, for the petitioner.

*Phillip M. Clark, Esq.*, for the respondent.

OPINION.

Love: The question for decision is what method should be used in computing and reporting for income-tax purposes the income derived by petitioner from sales of lumber, which lumber had been purchased at "log-run prices," which are average prices applied indiscriminatingly to various grades of lumber. The circumstances peculiar to the taxable year are detailed in the findings and need not be repeated here. Suffice it to say that early in the year the market for lumber was a "seller's" market, petitioner departed from its usual custom of buying lumber on grade, and it entered into a number of purchase contracts for lumber at log-run rates, well knowing when it did so that the output of the mills would include a variety of grades. As time went on and sales of the more profitable grades preponderated, the ultimate resulting profits of the ventures of petitioner in the purchases became more and more doubtful and petitioner very prudently kept separate account on its books, of the "profits" attributable to sales of the lumber purchased at log-run prices. At the end of the taxable year the amount of the book profits thus reserved was not transferred to the profit and loss account nor was it reported in the income-tax return. Respondent has added the amount of these profits to the income reported on the return.

The first contention of petitioner is that it is on a "long-term contract" basis with relation to the lumber purchased at log-run prices, and, therefore, the entire proceeds of the sales of the lumber should be held in reserve until all of the lumber contracted for has been acquired and disposed of, whereupon the profit or the loss attributable to the entire venture will be carried to profit and loss account and reported for income-tax purposes. Petitioner relies upon this provision of article 36, of Regulations 45:

Art. 36. *Long-term contracts.*—Persons engaged in contracting operations, who have uncompleted contracts, in some cases perhaps running for periods of several years, will be allowed to prepare their returns so that the gross income will be arrived at on the basis of completed work; that is, on jobs which have been finally completed any and all moneys received in payment will be returned as income for the year in which the work was completed.

It hardly appears necessary to answer at length such a contention. Having acquired a quantity of lumber by purchase, contracted for more, and sold a part of that acquired, petitioner contends it should at present report no income since the ultimate outcome is doubtful of the venture in purchasing the lumber. There were no unfilled sales orders at the end of the year so far as we know. The situation was simply that a quantity of the lumber remained on hand unsold. By no stretch of the imagination can such a situation be included in the provisions of article 36, which obviously refers to sales or executory contracts which are directly productive of gross income.

The provisions of the Revenue Act of 1918 pertinent to this issue are as follows:

SEC. 233. (a) That in the case of a corporation subject to the tax imposed by section 230 the term "gross income" means the gross income as defined in section 213 * * *

SEC. 232. That in the case of a corporation subject to the tax imposed by section 230 the term "net income" means the gross income as defined in section 233 less the deductions allowed by section 234, and the net income shall be computed on the same basis as is provided in subdivision (b) of section 212 or in section 226.

SEC. 213. That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivison (b) of section 212, any such amounts are to be properly accounted for as of a different period; * * *

SEC. 212. (a) That in the case of an individual the term "net income" means the gross income as defined in section 213, less the deductions allowed by section 214.

(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *

Petitioner comes squarely within these provisions. It is on the accrual basis, employs inventories in the computation of income and

derived gross income within the taxable year from sales of the lumber, which sales were completed transactions. We agree with respondent that there is no ground for a deferment to a subsequent year of the computation of the profit or loss. Cf. *Atkins Lumber Co.*, 1 B. T. A. 317, wherein we said:

> While this presents a situation which has a strong appeal we can not overlook the fact that the taxing statutes have been designed to levy income and profits taxes upon the gains and profits of business for annual periods and that each annual period must necessarily, under the provisions of the law stand by itself.

In the alternative, petitioner contends for a complete revision of its books so that (1) accuracy will be attained in the determination of the profits reflected in the reserve accounts attributable to the sales of lumber shipped from the mills direct to customers; (2) its income will be computed through the use of an inventory of the lumber on hand at the mills at the end of the year valued on a basis of the lower of cost or market.

The proposed revision follows the usual procedure of a taxpayer on the accrual basis accustomed to valuing its inventories on the basis of the lower of cost or market. Taxpayer did not physically inventory the lumber on hand at the mills and it now proposes to assume that the lumber shipped from the mills in subsequent years was actually cut during 1920 and therefore was on hand at the end of the year.

There appear good grounds for the claim that the cost of the lumber sold, as entered on the books, is inaccurate and that the entries result in an overstatement for income-tax purposes of the profits for the taxable year. The buyers who represented petitioner were experienced men capable of estimating the probable quantities of the yield in the respective grades. The summary prices at which they purchased reflected their opinions of the average cost of the aggregate expected to be derived. In only the narrowest, most meticulous sense, may it be held that the better grades cost no more and the low grades cost no less, than the " log-run " price. We agree with petitioner that more accurate costs should have been computed but we can not approve the method of computation of the revision proposed by petitioner, for the reason that it contains many assumptions. However well it may be supported by the opinions of experts as representing normal conditions and average results, it, nevertheless, will lack a satisfactory basis of fact. This is purely a fact question. From the varied details exhibited in the brief of petitioner it seems probable that the full accounting books and records available to petitioner may afford sufficient data for the revisions contended for. However, we have carefully considered the evidence before us and reluctantly conclude that we are not in the favored

position of the taxpayer in this regard. The parts of the books introduced in evidence do not enable an ascertainment of the respective quantities of each grade of lumber actually derived from the mills. Furthermore, we are not convinced that all of the lumber shipped from the mills in subsequent years was actually cut and on hand at the end of the taxable year. We are left in a position where we can not direct, and respondent can not make a computation of revised separate grade costs based upon evident facts, nor can quantities on hand be satisfactorily ascertained to the end that the drop in log-run prices be availed of through an inventory priced at the market value. There is nothing to do but sustain the respondent. Cf. *McAnelly Hardware Co.*, 9 B. T. A. 361; *F. G. Bishoff*, 6 B. T. A. 570.

*Judgment will be entered for respondent.*