DEER ISLAND LOGGING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30307, 31613. Promulgated January 8, 1929.

*Ivan F. Phipps, Esq.*, and *Charles E. McCulloch, Esq.*, for the petitioner.

*Albert S. Lisenby, Esq.*, for the respondent.

OPINION.

MILLIKEN: The only question requiring a decision at this time, is the proper time for accounting for income, admittedly earned or received in 1920, 1922, and 1923, and for the expenses, losses, and statutory allowances, paid or incurred in the same years incident to the production of that income, considering the circumstance that such income was derived from the sale of products acquired under a contract which necessitated productive operations on the part

of petitioner for a period extending over more than one taxable year. The petitioner maintains that its books of account were kept upon the long-term-contract basis, that such basis clearly reflected its net income, and that, under the provisions of sections 212 (b), 213, and 233 of the Revenue Acts of 1918 and 1921, it is entitled, and required, to compute its net income upon the same basis. The respondent answers that the nature of petitioner's business is not such as to entitle it to return its income upon the long-term-contract basis, as provided in article 36 of Regulations 45 and 62, and that the petitioner is required by statute to compute and return its net income upon an annual basis.

The provisions of the Revenue Acts of 1918 and 1921 pertinent to this question are the same in both Acts and are as follows:

SEC. 233. (a) That in the case of a corporation subject to the tax imposed by section 230 the term " gross income " means the gross income as defined in sections 213 * * *

SEC. 232. That in the case of a corporation subject to the tax imposed by section 230 the term " net income " means the gross income as defined in section 233 less the deductions allowed by section 234, and the net income shall be computed on the same basis as is provided in subdivision (b) of section 212 or in section 226.

SEC. 213. That for the purposes of this title (except as otherwise provided in section 233) the term " gross income "—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items * * * shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period; * * *

SEC. 212. (a) That in the case of an individual the term " net income " means the gross income as defined in section 213, less the deductions allowed by section 214.

(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *

Under the general authority conferred upon him by the statutes to make all necessary regulations for their proper enforcement, the respondent, in article 36 of Regulations 45 and 62, has prescribed certain methods for computing the net income of taxpayers engaged in contracting operations extending over a period involving more than one taxable year. Article 36 of Regulations 45 provides as follows:

*Long-term contracts.*—Persons engaged in contracting operations, who have uncompleted contracts, in some cases perhaps running for periods of several years, will be allowed to prepare their returns so that the gross income will be arrived at on the basis of completed work; that is, on jobs which have been finally completed any and all moneys received in payment will be returned as income for the year in which the work was completed. If the gross income is arrived at by this method, the deduction from such gross income should include and be limited to the expenditures made on account of such completed contracts. Or the percentage of profit from the contract may be estimated on the basis of percentage of expenditures, in which case the income to be returned each year during the performance of the contract will be computed upon the basis of the expenses incurred on such contract during the year; that is to say, if one-half of the estimated expenses necessary to the full performance of the contract are incurred during one year, one-half of the gross contract price should be returned as income for that year. Upon the completion of a contract if it is found that as a result of such estimate or apportionment the income of any year or years has been overstated or understated, the taxpayer must file amended returns for such year or years. See section 212 of the statute and articles 22–24.

Article 36 of Regulations 62 provides as follows:

*Long-term contracts.*—Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. As used herein the term "long-term contracts" means building, installation, or construction contracts covering a period in excess of one year. Persons whose income is derived in whole or in part from such contracts may, as to such income, prepare their returns upon the following bases:

(*a*) Gross income derived from such contracts may be reported upon the basis of percentage of completion. In such case there should accompany the return certificates of architects or engineers showing the percentage of completion during the taxable year of the entire work to be performed under the contract. There should be deducted from such gross income all expenditures made during the taxable year on account of the contract, account being taken of the material and supplies on hand at the beginning and end of the taxable period for use in connection with the work under the contract but not yet so applied. If, upon completion of a contract, it is found that the taxable net income arising thereunder has not been clearly reflected for any year or years, the Commissioner may permit or require an amended return.

(*b*) Gross income may be reported in the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice to so treat such income, provided such method clearly reflects the net income. If this method is adopted there should be deducted from gross income all expenditures during the life of the contract which are properly allocated thereto, taking into consideration any material and supplies charged to the work under the contract but remaining on hand at the time of completion.

Where a taxpayer has filed his return in accordance with the method of accounting regularly employed by him in keeping his books and such method clearly reflects the income, he will not be required to change to either of the methods above set forth. If a taxpayer desires to change his method of accounting in accordance with paragraphs (a) and (b) above, a statement showing the composition of all items appearing upon his balance sheet and used in connection with the method of accounting formerly employed by him, should accompany his return.

Petitioner was advised by counsel that it was within the limited class of taxpayers to whom the above quoted regulations apply, and, acting upon that advice, it elected to postpone an accounting for the income derived from the sale of products acquired under the contract set out in the findings of fact until all the necessary operations under that contract had been completed. While it made formal record on its books of income, as earned or received, and of expenses, as paid or incurred, there was not a formal closing of the books at the end of 1920, 1921, 1922, and 1923, such as is customary with business enterprises at the close of an accounting period, and no profits, actual or estimated, were accounted for in those years. It filed income-tax returns for 1920, 1922, and 1923, in which it showed neither gain nor loss, but stated that it was operating under a long-term contract and that the income, if any, derived from such operations would be reported upon the completion of the contract. It reported all of the income from sales of timber made in 1920, 1922, and 1923, as income for 1924, the year in which the contract was completed, and claimed deduction for all expenses incurred incident to the operations under the contract.

The structure of all revenue statutes is founded upon the principle that there shall be an annual accounting for income, unless in order to reflect true income a different basis is necessary. The respondent has determined that the use of an annual basis reflects income and petitioner desires a departure from same in order that its income may be clearly reflected. It, therefore, becomes necessary to determine, if, based upon the facts of record, this case is one where there should be such a departure.

We do not believe this is a case that falls within the permissive language of section 212 of the statute, or within the intendment of the regulations of the respondent promulgated in connection therewith. The application of the long-term-contract basis, as permitted by article 36 of Regulations 45 and 62, is applicable only to such situations where true income can not be reflected by resort to the usual annual basis.

The purpose of petitioner in entering into the contract in question was to secure and purchase timber. We think it manifest that petitioner can not bring itself within the four corners of the regu-

lations by a mere showing that there is income to be derived from the disposition of property acquired under a long-term contract. The income in this case arises primarily from the sale of the property (timber) obtained pursuant to its provisions. Here the petitioner was not holding itself out as offering its services or binding itself to perform services for which it was to be paid by the contracting parties, but, to the contrary, it obligated itself to pay to the contracting parties certain amounts for the timber as removed. The profitableness of the contract, in so far as petitioner was concerned, inured in the profit it was to derive from the resale of the timber to others and its success in selling such timber at a profit was and did gauge the extent of the income it earned.

In *C. H. Swift & Sons, Inc.*, 13 B. T. A. 138, we had before us a somewhat analogous situation. In that case, the petitioner who was engaged in the purchase and resale of lumber at wholesale, had entered into long-term contracts for the purchase of lumber intended for resale, and it was contended that the proceeds of sales should be accounted for only after all the lumber contracted for had been received and disposed of when the profit or loss attributable to the entire venture would be reported for income-tax purposes. We there said in answer to that contention:

> It hardly appears necessary to answer at length such a contention. Having acquired a quantity of lumber by purchase, contracted for more, and sold a part of that acquired, petitioner contends it should at present report no income since the ultimate outcome is doubtful of the venture in purchasing the lumber. There were no unfilled sales orders at the end of the year so far as we know. The situation was simply that a quantity of the lumber remained on hand unsold. By no stretch of the imagination can such a situation be included in the provisions of article 36, which obviously refers to sales or executory contracts which are directly productive of gross income.

> The provisions of the Revenue Act of 1918 pertinent to this issue are as follows:

> &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

> Petitioner comes squarely within these provisions. It is on the accrual basis, employs inventories in the computation of income and derived gross income within the taxable year from sales of the lumber, which sales were completed transactions. We agree with respondent that there is no ground for a deferment to a subsequent year of the computation of the profit or loss.

The sole distinction in the two cases is in the manner in which they acquired the products which they resold. In the Swift case the taxpayer acquired outright, apparently for a cash payment or on the usual credit terms, lumber which it resold without any change by manufacturing or other productive processes. In the case at bar, petitioner was required to fell the timber at its own cost, an operation which required the construction and use of capital facilities, and, in addition, it was required to pay a stipulated price per

thousand feet to the owner of the timber when the timber was sold. But this lone distinction is not of a character which would necessitate a different rule in the case of this petitioner. The vital and controlling consideration is that in both cases the income was derived from the resale of products acquired under long-term contracts, and the contracts themselves are not directly the source of the income. Hence, we believe the same rule should apply in both cases.

This brings us to the question, much emphasized in brief of counsel for petitioner, that the income for the years should be computed on a long-term-contract basis in view of the fact that the petitioner so kept its books. We must always bear in mind when such a contention is made that bookkeeping entries are not in and of themselves controlling. *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179. From a business standpoint, petitioner had the right to keep its books in such a manner that it could determine whether it had gained or lost upon the entire timber-cutting operation. It had the undoubted right to refrain from the declaration of dividends until all the timber had been cut and sold. It could choose the method it desired in keeping its books in balance for financial statements. But all of such methods may not, and, we believe in this case the method employed does not, conform to the reflection of true income for Federal taxation purposes. Congress may tax that which a business man may desire, for conservative purposes, to hold in a reserve. See *Consolidated Asphalt Co.*, 1 B. T. A. 79, and *Harrison* v. *Heiner*, 28 Fed. (2d) 985 (Dist. Ct., W. Dist. Pa., October 21, 1928). During each of the years in controversy, petitioner realized a substantial income from sales of timber. Those sales, so far as we know, were completed transactions, and the income thus realized could not be altered by any possible future contingency. The income, and all the expenses incident to the production thereof, were definitely ascertainable, and the net income of each year could be readily computed, as the respondent has done. No future adverse happening could have any effect upon the net income of these years. Counsel for petitioner also emphasizes that the income for each of the years was not evenly earned and that the stand of timber was heavy in some areas, while light in others, and that expenditures were uneven, incident to the cutting of the timber. We can perceive no more distinction or hardship in the case of petitioner than any other taxpayer engaged in similar undertakings. An officer of petitioner testified that had petitioner owned the tract of timber in question it would have been subjected to the same business uncertainties and perplexities as they were operating under the contract. If any such happening as petitioner calls to our attention should be met with, it is, under the statutory rules, to be reckoned with and accounted for in the year in which it takes place.

Having realized a net income in each of the years in controversy, the petitioner was in duty bound to make an accounting of it for income-tax purposes.

This petitioner is in no different situation, as concerns its long-term contracts, than a great many other taxpayers who are carrying on business under somewhat similar conditions. In all our major manufacturing industries, it is customary practice to purchase raw materials under contracts extending well into the future. Scores of taxpayers are engaged in the extraction and sale of coal, oil, gas, and other natural deposits, under royalty lease agreements which in a large majority of cases extend over long periods of years. There are others who under like agreements, are taking the timber from our forests for conversion and resale. See *Atkins Lumber Co.*, 1 B. T. A. 317, wherein we said, " the taxing statutes have been designed to levy income and profits taxes upon the gains and profits of business for annual periods and each annual period must necessarily, under the provisions of the law, stand by itself." To hold that none of these realize income until the purchase or royalty agreements have expired, and all of the products taken under them have been converted and disposed of, would be a paradoxical ruling without statutory foundation. Yet, that is the logical end to which petitioner's reasoning leads.

Petitioner also relies on the fact that it entered into the contract of September, 1920, with the provisions of article 36 of Regulations 45 (1920 edition) in mind and that it should be held to come within its provisions. Of course, if petitioner is entitled to report its income on a long-term-contract basis, it is immaterial whether it entered into the contract with or without the Regulations in mind, but it may be observed that the article of the Regulations in question was not promulgated until the issuance of Treasury Decision 3146, on January 28, 1921.

In brief filed in this cause, counsel for petitioner has dwelt at length on the decision of the District Court for the Western District of Missouri *In re Harrington*, 1 Fed. (2d) 749. In that case the firm of engineers contracted to do specific engineering work for stated sums, which was dependent upon certain contingencies. There the taxpayer was engaged in the type of work (i. e., contractor) contemplated by the regulations of the respondent.

We hold that petitioner's net income is not clearly reflected by the method of accounting employed in keeping its books. Since the parties have stipulated that if the petitioner is not entitled to report its net income upon the long-term-contract basis, the respondent has correctly determined the net income of each of the years in controversy, the net income for each year as computed by the respondent is approved.

These proceedings will be restored to the general calendar for hearing in due course, for the year 1920, pursuant to Rule 62(c) of the Board's rules of practice.

Reviewed by the Board.

STERNHAGEN, GREEN, ARUNDELL, and SIEFKEN concur in result.