ERWIN R. EFFLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50160.  Promulgated January 17, 1934.

*Le Roy E. Eastman, Esq.*, and *Erwin R. Effler, Esq.*, for the petitioner.

*L. H. Rushbrook, Esq.*, and *Harold Allen, Esq.*, for the respondent.

794

OPINION.

McMahon: We are here called upon to determine whether the respondent erred in including in the taxable income of the petitioner for the year 1926 the amount of $60,000 constituting a part of the amount of $285,533.33. This item of $285,533.33 is the aggregate of amounts which were actually paid by certain trusts to the partnership of Smith, Baker, Effler & Eastman in the year 1926, and constituted either fees to Smith and Baker, two of the members of the partnership, for their services as trustees, or such trustees' fees and, in addition, fees to the partnership for legal services. The greater part of this amount was paid by checks from the trusts to the partnership. A small amount was paid by transferring three United States bonds to the partnership. The books of the partnership show that the full amount of $285,533.33 was received in the year 1926 and it was treated therein as income in that year. The books of the partnership show that on December 21, 1926, a dividend of $285,-533.33 was declared by the partnership. Each partner received in 1926 a check for his share of this amount of $285,533.33, the petitioner receiving a check for $79,949.33, being his 28 percent share under the partnership agreement. The books of the partnership show that each partner received his share during 1926. In this regard the following testimony of Cecile B. Carmichael, bookkeeper of the partnership, is pertinent:

Q. So that the entire amounts of these several items of cash received including the $3,000 bonds, were put through the firm's books as fees received, is that right?

A. Yes, sir.

*     *     *     *     *     *     *

Q. Now, what do your books show about the disposition that was made of this money, this $285,000?

A. On December 21st, 1926, journal page 138, I show checks drawn to the members of the firm:

| | |
|---|---|
| Rufus H. Baker | $46,685.34 |
| Barton Smith | 79,949.33 |
| Erwin R. Effler | 79,949.33 |
| LeRoy E. Eastman | 79,949.33 |

Q. And what is the entry after those names?

A. To cash to you.

Q. And that is after each one?

A. After each one.

Before causing the trusts to pay the amount of $285,533.33 to the partnership, Smith insisted that the petitioner and Eastman agree to the placing of $60,000 of each of their shares in trust until certain claims against Smith arising out of the sale of certain of the trust assets were settled. The petitioner and Eastman agreed to this. Petitioner and Eastman each deposited his check upon receiving it, but each immediately placed $60,000 in trust and signed an indemnity agreement. Smith and Baker each returned his partnership share of the amount of $285,533.33 as income in the year 1926. In the returns filed on behalf of the trusts for the year 1926 the amounts comprising the item of $285,533.33 were deducted as having been paid out in the year 1926.

The respondent held that the full amount of $285,533.33 constituted income of the partnership of Smith, Baker, Effler & Eastman in the year 1926 and that the petitioner is taxable in 1926 upon his 28 percent share, $79,949.33. Of this amount the petitioner returned as taxable to him in the year 1926 the amount of $19,949.33, and no question is raised as to the taxability of that amount, the controversy being as to the taxability in 1926 of the remainder, $60,000.

There is considerable controversy between the parties over the question of just what the item of $285,533.33 represents. The petitioner, in his brief, argues upon the theory that it represents solely trustees' fees, whereas the respondent contends that it was in payment of both fees to the trustees and legal fees to the partnership. However, we find it unnecessary to determine this question, since in either event it is our opinion that the amount of $285,533.33 constituted income of the partnership in the year 1926.

The income tax is imposed upon the income received in any particular accounting period, regardless of whether any particular trans-

action which as a whole extends over a number of years results in a profit or loss.

In *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359, the Supreme Court stated in part:

That such receipts from the conduct of a business enterprise are to be included in the taxpayer's return as a part of the gross income, regardless of whether the particular transaction results in net profit, sufficiently appears from the quoted words of Section 213 (a) and from the character of the deductions allowed. Only by including these items of gross income in the 1920 return would it have been possible to ascertain respondent's net income for the period covered by the return, which is what the statute taxes. * * *

In *Florence B. Fawsett*, 23 B.T.A. 1148; affirmed in *Fawsett* v. *Commissioner*, 63 Fed. (2d) 445; certiorari denied, 290 U.S. 641, we stated:

Questions of postponing tax liability until transactions have been concluded in later years have been before the Board in numerous cases and we have uniformly held that the income tax is imposed on an *annual basis* [emphasis supplied] and its imposition can not await the winding up of a business, but is imposed annually upon the gains which arise from transactions from year to year. *Atkins Lumber Co.*, 1 B.T.A. 317; *R. E. Thompson et al.*, 7 B.T.A. 391; *Cleveland Railway Co.*, 10 B.T.A. 310; *C. H. Swift & Sons, Inc.*, 13 B.T.A. 138; *Deer Island Logging Co.*, 14 B.T.A. 1027; *Arthur H. Earle*, 15 B.T.A. 668; affd., 38 Fed. (2d) 965; and *American Industrial Corporation*, 20 B.T.A. 188.

In the last mentioned case the Board, in speaking of the principle for which petitioner is now contending, said (p. 197):

* * * Upon the petitioner's theory its tax liability can be projected indefinitely into the future, and, in effect, the Government must assume the hazards of the business with no share in its management and must await collection of its revenue until it is petitioner's pleasure to conclude its operations. Speaking of an analogous contention, the Board said, in *Mesta Machine Co.*, 12 B.T.A. 523, 537, that it "would enable a taxpayer to postpone indefinitely the return of income which has actually been received, which result, in our opinion, is inconsistent with the theory of the tax laws."

To the same effect is *Trojan Oil Co.*, 26 B.T.A. 659.

See also *Board* v. *Commissioner*, 51 Fed. (2d) 73, and *Ford* v. *Commissioner*, 51 Fed. (2d) 206. In the latter case, the court stated:

* * * The true normal criterion to be applied in this class of case is the actual receipt and retention during the year in question of what was then considered to be income, *not whether the taxpayer exposed himself to possible personal liability*. [Emphasis supplied.]

Under the principles set forth in the above authorities, we think it clear that the amount of $285,533.33 constituted income to the partnership in the year 1926.

The proof shows that the amount of $285,533.33 was actually paid over to the partnership in the year 1926 and, as heretofore stated,

that Smith and Baker, two of the members of the partnership, unqualifiedly received the benefit of their shares therein in the year 1926 and returned such shares as taxable income to them in that year. It is true that Smith, before causing the amount in question to be transferred to the partnership, insisted, and the petitioner and Eastman agreed, that the petitioner and Eastman should each place $60,000 in trust pending the settlement of claims against Smith. However, this does not affect the question of whether it was income to the partnership in the year 1926 under the revenue act. Even if it were considered that the full amount of $285,533.33 constituted, in the first instance, fees to Smith and Baker as trustees, such amount became, under the partnership agreement, income of the partnership in the year 1926, the year such amount was earned and paid. It is true, as pointed out by the petitioner, that under the articles of partnership only the net amount of the personal fees to the members of the partnership, after all expenses, taxes, salaries, and losses are paid, constituted partnership income. If expenses, taxes, salaries, or losses had been paid by Smith and Baker in the year 1926 in earning fees from the trust, then under the articles of partnership the amounts thereof would be deducted before computing the amount which inured to the benefit of the partnership. But no such expenditures were made by Smith or Baker in the year 1926 and, as hereinabove indicated, the trust did pay out the amount of $285,533.33 in 1926 as compensation either to the trustees or to the trustees and the partnership, and the partnership actually received it in 1926.

The fact that at the close of 1926 the probate court of Lucas County, Ohio, had not approved the trustees' reports, and the fact that at that time claims of Gould and Miniger against Smith had not been settled, do not serve to postpone the taxability of the amount of $285,533.33 beyond the year 1926. There is no showing here by petitioner that the authorization or approval by the probate court of the payment of $285,533.33 by the trustees was required before actual payment, and the prospect was that its approval after payment would not be challenged. Furthermore, for the purpose of applying the Federal revenue acts, those acts have their own criteria for the determination of what is taxable income, irrespective of local law. *Burnet* v. *Harmel*, 287 U.S. 103.

Under the provisions of section 218 (a), (c) of the Revenue Act of 1926,[1] the full share of a partner in the partnership income of any

---

[1] Sec. 218. (a) Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year * * *.

\*     \*     \*     \*     \*     \*     \*

(c) The net income of the partnership shall be computed in the same manner and on the same basis as provided in section 212 except that the deduction provided in paragraph (10) of subdivision (a) of section 214 shall not be allowed.

particular year is taxable to him whether distributed or not. Having held that the amount of $285,533.33 was income to the partnership in 1926, it follows that even if the petitioner's partnership share therein were not distributed to him it would be taxable to him. But here it was actually distributed to him. The fact that the petitioner placed a portion of his share in trust in accordance with the demand of Smith, does not relieve him of his liability to pay a tax thereon in 1926. Cf. *Ruprecht* v. *Commissioner*, 39 Fed. (2d) 458, affirming *Charles C. Ruprecht*, 16 B.T.A. 919, wherein the court stated:

To permit partners to distribute the profits otherwise than according to the partnership agreement and thereby escape their liability imposed by law, would disrupt the scheme of taxation adopted by Congress.

See also *Robert A. Faesy*, 1 B.T.A. 350.

It was the position of the petitioner that, at the time Smith made his demands, he, petitioner, could not and should not be compelled to agree thereto. He yielded to Smith's insistence without compulsion and out of deference to Smith. In this connection, the following testimony of the petitioner is enlightening:

A. * * * I told him [Smith], I did not think that that was quite a fair condition to impose. I have tried to say that we were dealing with a man of advanced age and ill, and I think Your Honor will permit me to say that contact in the firm for many years with a man of that character—of the highest character—certainly forces a feeling of loyalty and perhaps some embarrassment when a paper is put before you as strenuous as this instrument was—Mr. Eastman, when he saw how Mr. Smith reacted, urged me to waive any objections, but I felt I should stand on the objection, and I said so. It finally resulted in our yielding to his insistence that he would hold that money in those trusts. * * *

We conclude that the action taken by the petitioner in placing $60,000 of his share in trust was his own act which could not be legally compelled, and, as pointed out above, such action, irrespective of how commendable his motives were, can not operate to relieve him of his tax liability upon his full share in the year 1926. When the petitioner in 1926 received a check for his full share he was, as a matter of law, free to do with it as he wished, and we are no more concerned with his motives in placing a part of it in trust as he did than we would be if he had placed it in trust for the benefit of some member of his family or for some charitable or educational purpose.

The evidence shows that in years subsequent to 1926 the petitioner received interest upon the $60,000 which had been placed in trust and that he returned such interest as taxable income to him. This is wholly inconsistent with the theory now advanced by petitioner that he did not become the owner of the $60,000 in 1926, and it sustains our conclusion.

The fact that in later years a portion of the petitioner's share was required to be contributed toward the payment of the settlement of

the litigation against Smith, and other expenses, has no bearing upon the question of the taxability of his entire share in the year 1926. See *North American Oil Consolidated* v. *Burnet*, 286 U.S. 417, and *Ford* v. *Commissioner*, *supra*.

The petitioner concedes that the form of the transactions herein is against his contention, but contends that the substance of the transactions supports his view that the amount of $60,000 was not taxable to him in the year 1926. However, we believe that the form truly reflects the substance of the transactions. It is elementary that taxation is a practical matter and that we must look to what actually happened. Tested by what actually happened here, the $60,000 was income to the petitioner in 1926.

The petition contains five assignments of error, all of which, however, are directed toward showing that the respondent erred in including the $60,000 in petitioner's taxable income for the year 1926. Our discussion above disposes of the contentions advanced by the petitioner in assignments of error (a), (b), and (e). Our holding above that the form reflects the substance, that Smith had no legal right to impose any condition upon the petitioner's use of his full share of the partnership income in question and that it was actually received by petitioner in 1926, makes further discussion unnecessary of the petitioner's contention in assignment of error (c) that the condition was a condition precedent to the vesting of title to the $60,000 in the petitioner. With regard to assignment of error (d), it matters not whether the $60,000 was set up by the petitioner as a reserve against expenses and losses incident to litigation against Smith. In any event such amount was first income to the petitioner.

*Decision will be entered for the respondent.*