R. E. THOMPSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

CLARK W. KELLY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 6523, 6524. Promulgated June 17, 1927.

Income and deductions are determined upon an annual basis
and, in the circumstances of these proceedings, items of income
received in 1920 may not be deferred to a subsequent year. The
cost of land and amounts expended for other items of a major
character are not proper deductions from gross income for the
year in which such expenditures are made.

*S. Leo Ruslander, Esq.,* for the petitioners.
*John W. Fisher, Esq.,* for the respondent.

These proceedings were consolidated for the purpose of hearing
and decision. They involved deficiencies in income tax for the year
1920 in the amount of $1,162.06 as to R. E. Thompson and $178.99
as to Clark W. Kelly. The deficiencies are due to an increase by the
Commissioner in the income of the Fern Hollow Gas & Oil Co., a
partnership, in which the petitioners were two of the four partners.

### FINDINGS OF FACT.

The Fern Hollow Gas & Oil Co., an ordinary partnership, and
hereinafter referred to as the partnership, was formed in 1920 under
the Fictitious Names Act of Pennsylvania and was originally com-
posed of four partners, namely, the two petitioners and Messrs.
Brown and Temple. The purpose of the partnership was to acquire
certain land and drill oil and gas wells thereon.

In order to secure funds for carrying out the project, the prospec-
tive income from the property was divided into 600 shares, repre-
sented by certificates, each holder of such a certificate to be entitled to
one six-hundredth part of whatever net earnings should be derived
from the production, less a one-eighth interest in such earnings
retained by the partnership, of any oil or gas which might be found
in paying quantities in the two wells to be drilled. The certificate in
question reads as follows:

In consideration of the sum of $100.00, to it in hand paid, the Fern Hollow
Gas and Oil Company, of Braddock, Pa., a partnership composed of R. E.
Thompson, Clark W. Kelly, Ralph J. Brown and Miner E. Temple, does hereby
sell, assign, transfer and set over unto ——————————————— heirs
and assigns, the one six-hundredth (1-600th) part of the net earnings derived
from the production—less the Company's one-eighth (1-8th) royalty—of any

108346°—28——28

oil or gas which may be found in paying quantities in the two wells to be drilled by the Company, through the Speechley sand on a four-acre tract of land situate in Nine Mile Run Hollow, Fourteenth Ward, City of Pittsburgh, Pa., unless oil or gas is found in paying quantities at a lesser depth.

This Assignment is executed by the Company and accepted by the Assignee—, subject to the following terms and conditions:

1—This share is non-assessable and the Assignee is not liable for any debts contracted by the Company, hence the relationship between the Company and the Assignee, created by this assignment, is not one of partnership, but one of agency for the distribution of any production, as evidenced by any net earning.

2—The Company, as the owner of the property and said wells, shall have absolute and exclusive charge of the drilling and management of the wells and the sale of any production therefrom, and upon the completion of both wells and the payment to the Assignee, of his or her proportionate share, of any net earnings, shall have discharged every obligation due the Assignee.

3—In the event the company drills other wells on said tract, the Assignee will be given a seven-day option of purchasing one more share.

During the year 1920, 578 of these certificates were sold for $57,800, the remaining 22 certificates being retained by the partners. The two wells referred to were drilled in the same year by contract under which payment of $37,697.70 was made to the contractor for drilling and for equipment furnished to the contractor.

Gas production continued from 1920 to 1924 when the wells ceased production and the entire property was disposed of. The amount received by the partnership from all sources from 1920 to 1924 exceeded the amount disbursed for all purposes, including the cost of land and drilling expenses, by $8,373.58.

The partnership kept no books of account, and filed its returns for 1920 on the receipts and disbursements basis. In this return it showed a net income of $13,903.04, which amount was increased $7,198.05 by the Commissioner on account of the disallowance of a part of the depletion claimed. Such increase was allocated to the respective partners in accordance with their pro rata share of the profits, thus increasing the income of the two petitioners.

The receipts and disbursements of the partnership for 1920, exclusive of the cost of land and withdrawals by the partners, were as follows:

Receipts:

| | |
|---|---:|
| From sale of metered gas | $4,408.56 |
| From sale of 578/600 of ⅞ of prospective production | 57,800.00 |
| Rentals derived from old buildings on property | 13.00 |
| Miscellaneous receipts | 340.15 |
| Interest on daily bank balances | 454.57 |
| Total receipts | 63,016.28 |

Disbursements:

| | |
|---|---:|
| Payments to owners of 578/600 of ⅞ of prospective production | $2, 658. 80 |
| Mortgage interest payments | 315. 00 |
| Payments to contractor for drilling wells and furnishing necessary equipment | 37, 697. 70 |
| Other expenses incidental to drilling | 378. 88 |
| Postage, printing, advertising, etc | 353. 77 |
| Repairs to old buildings on property | 64. 66 |
| Commissions paid for sale of interests in production | 1, 050. 00 |
| Local taxes | 159. 67 |
| Safe deposit box rental | 4. 00 |
| Court costs and revenue stamps | 43. 25 |
| Traveling expenses | 47. 24 |
| Sundry expenses | 271. 85 |
| Fire insurance | 174. 25 |
| Lumber | 897. 00 |
| Survey of property | 176. 18 |
| Tubing of wells | 395. 00 |
| Total disbursements | 44, 687. 25 |
| Cash receipts over disbursements | 18, 329. 03 |

The cost of the land, which does not appear in the foregoing disbursements, was $11,000, and the partners' withdrawals for 1920 were $3,645.71.

### OPINION.

LITTLETON: The deficiencies in this case arose as the result of the disallowance by the Commissioner of a part of the depletion claimed in the partnership return filed by the Fern Hollow Gas & Oil Co. for the calendar year 1920, which resulted in an increase in the partnership income and correspondingly an increase in the taxable income of the petitioners, who were two of the partners in the enterprise.

The action of the Commissioner, however, in disallowing depletion is not the issue raised before the Board, it apparently being conceded by petitioners that the foregoing was correct. The error here assigned is, broadly, that the Commissioner has determined the income of the partnership for 1920 to be in excess of what it really was when effect is given to all proper items of income and all allowable deductions.

The problem then is to determine the correct income of the partnership. The parties are, in effect, in accord as to the amounts which were received and disbursed by the partnership during the year 1920, the question being how the various items should be treated for tax purposes.

In order to determine taxable income, it is necessary in any given case to decide first the basis on which income is to be computed,

since very different results follow when a receipts and disbursements basis is being used as compared with the use of the accrual basis. Section 212(b), Revenue Act of 1918, provides:

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 200 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

In this case, no books of account (as the term is ordinarily understood) were kept by the partnership, the information for its 1920 return being compiled from check books, canceled checks, pass books, memoranda, etc. This return reflected income on the basis of cash received and disbursed, and also included deductions from gross income on account of depreciation and depletion, the former being allowed in total by the Commissioner and the latter being almost entirely disallowed by him. Similarly, the petitioners' amended statement of income of the partnership is prepared on the basis of cash received and disbursed, capital items such as purchase of land being taken as a deduction and no depreciation or depletion being claimed.

The petitioners contend in the first instance that income of the partnership should be computed on the receipts and disbursements basis which they have used, wherein capital expenditures are taken as deductions from gross income or, in the alternative, that an accrual method should be followed and the income of the partnership determined upon the basis of the operation of the partnership from the date of its organization in 1920 to the end of its existence in 1924.

Considering, first, the situation with respect to the alternative method. It is not argued by the petitioners that there was sufficient information available in 1920, or any books kept, on which a return could have been prepared on an accrual basis which would have reflected even an approximation of the income which the partnership ultimately produced over its period of operation. It is readily apparent that such a method does show what ultimately resulted from the venture into which the petitioners and the other partners embarked in 1920, in a similar manner that would be true in considering the entire life of any business undertaking. It is, however, peculiar to our Federal revenue laws that the accounting period generally recognized is one year and the income and deductions must be

determined upon an annual basis. In effect, what the petitioners ask is stated in these words by one of the petitioners in his testimony that "Our maintenance is now, that we are taking it on the whole to show the amount of profit made in the entire deal." In other words, the petitioners contend that the Board should consider the operations of the partnership over the period from 1920 to 1924 in determining whether any income was derived in the year 1920 and defer as income of the partnership amounts received in 1920 from the sale of the rights to share in prospective earnings.

Not only are we of the opinion that no statutory authority exists for following this proposal, but also that the accrual method on an annual basis would not result in an allowance of the petitioners' contention. The principal item which gives rise to the income in question is $57,800 received from the sale of certificates entitling the holders thereof to an interest in the future net earnings, if any, of the partnership. These holders were unlike stockholders in a corporation in that they were merely entitled to share in anticipated net earnings and beyond this they had no voice in the business or right or interest in the property of the partnership prior to or upon dissolution, every obligation of payment to them being discharged when payment was made to them of their share of the net profits when earned and if none were earned they lost entirely. Whatever net earnings may have been derived and distributed in years subsequent to 1920 were deductible from the earnings of the partnership in determining the partners' distributable shares in such years. It is difficult to conceive of a basis upon which the amount of $57,800 might be deferred over the succeeding years. There was no investment by the partners of the amount of $57,800 nor was there any obligation that they should return this amount or any part of it to the purchasers of the certificates.

That an obligation rested upon the partners to pay out a part of the net profits as earned and that this obligation arose on account of the receipt of the amount of $57,800 from the sale of certificates, is certainly true, but it certainly is not of such a definite character that a reserve could be set up to provide for its amortization over future operation. Concerning the setting up of reserves for contingencies, the Board in the *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79, said:

It is quite true that not all amounts received constitute income; but when a taxable corporation in the course of its business of making profits receives contractual compensation for work done and material furnished; it can not contend that a part of the amount received is not income because the taxpayer is subject to a collateral obligation the fulfillment of which may require it to spend some of the amount. This is in substance what we said in the *Appeal of William J. Ostheimer*, 1 B. T. A. 18, and as we there said, this result is not

changed because in the light of general experience the taxpayer feels reasonably certain of the necessity to expend the amount and is impelled by business prudence to set up a reserve therefor. In this instance good accounting and the statute may not be in strict accord, since Congress may with entire fairness tax what a very conservative and prudent business man may wish to hold in reserve.

See also *Appeal of Uvalde Co.*, 1 B. T. A. 932, and *Appeal of Morrison-Ricker Mfg. Co.*, 2 B. T. A. 1008.

The second difficulty which arises in the use of the accrual method is that no books of account were kept by the partnership. In the *Appeal of John A. Brander*, 3 B. T. A. 231, the Board said:

> He had no method of accounting, for he kept no books, and, except in an extraordinary case, which does not now come to mind, an accrual method without accounting records is an anomaly. Such a method is inherently an accounting system whereby one is enabled not merely to record receipts and payments after they take place but to keep track of his financial rights and obligations under a credit system. Even a simple practice of accruals would require systematic accounting and some sort of bookkeeping. Without records it may generally be concluded that the cash method is being used.

The Board is, therefore, of the opinion that the accrual method is not applicable in determining the income of the partnership and that the entire amount of $57,800 received from the sale of certificates was properly included by the partnership in its return filed and by the Commissioner in his determination as a part of gross income.

Our next consideration is whether the deductions from income contended for by petitioners on the receipts and disbursements basis can be sustained. Under this theory, the material difference between the parties is that the petitioners consider all items of disbursements as deductions from gross income, regardless of their nature, and whether for land, permanent improvements, or additions, whereas the Commissioner contends that capital items are not proper deductions from gross income even on a receipts and disbursements basis. The principal item in controversy here is $11,000, representing the cost of the land. That the amount paid for such an item was a capital expenditure and therefore not deductible from gross income, either on the receipts and disbursements or the accrual basis, is too well established to admit of questioning. (See section 215 (b) of the Revenue Act of 1918.) In fact, petitioners do not specifically contend that this item and the item of $37,697.70 hereinbefore mentioned were not of a capital nature. The testimony shows that in the item of $37,697.70, the amount paid the contractor for drilling the wells and for equipment, there were certain items of a capital nature which were likewise not deductible from gross income.

In our findings of fact, there is shown an excess of receipts over disbursements of $18,329.03, exclusive of the amount paid for land.

Included, however, in the deductions which give rise to the foregoing net amount are capital items which are not allowable deductions, and no amount is shown among the deductions for depletion or depreciation to which the partnership is apparently entitled. In the original return as considered by the Commissioner certain capital items here claimed as deductions were not so included and depreciation and depletion were allowed as deductions.

The evidence is insufficient to show whether by the proper exclusion of the capital item and the allowance of the depreciation and depletion to which the partnership is entitled the income of the partnership would be more or less than that determined by the Commissioner.

*Judgment will be entered for the respondent.*

ARUNDELL, GREEN, and PHILLIPS dissent.