I. N. BURMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40598.   Promulgated June 9, 1931.

*H. N. Roth, Esq.*, for the petitioner.
*Eugene Harpole, Esq.*, for the respondent.

OPINION.

TRAMMELL: The petitioner contends that the notes of the corporation having a face value of $65,000 had no fair market value at the time of their receipt and that the respondent erred in determining that they had a fair market value equal to their face value. The respondent contends that the notes had a fair market value of $65,000 as determined by him.

The evidence shows that while Florida land was selling freely in 1925, it was selling only at highly speculative values. Under such circumstances the corporation acquired several parcels of land which according to the evidence had values that, except for the speculative and inflated prices, were only fractional parts of the amounts it had agreed to pay for them. Such values after the speculative period was over were in most instances much less than the outstanding purchase price mortgages on the property. In some instances these mortgages were found to be twice the value of the property when the speculative period was over. It does not however appear that any reduction in values occurred during the taxable year. During that year it is not shown that the properties had a market value less than the prices at which a willing buyer and a willing seller were willing to trade. With respect to the value of the land

the petitioner submitted the testimony of two witnesses. Their testimony is to the effect that the land in question had a value of only $40,000 in 1925. But this seems to be based on the theory that except for the speculative prices the land would have had that value. It seems to be inconsistent with the actual facts, which show that parties dealing at arm's length valued it at a higher price. We must consider only the facts actually known or reasonably anticipated during the year when the transaction occurred. The real question is what the market value of the notes was, if any.

On this question the record shows that the petitioner tried to discount the notes at a bank and also tried to obtain a loan on them from the bank, without success. No explanation is offered as to the bank's refusal to let him have money on them. Various reasons other than the market value of the notes might have influenced the bank in taking the action it did. The petitioner's failure to obtain money on the notes under the circumstances presented does not establish a lack of fair market value. See *M. E. Gettys*, 3 B. T. A. 441; *Wray-Dickinson Co.*, 6 B. T. A. 269. The petitioner also submitted the testimony of a witness who in 1925 attempted to sell some mortgage notes but was unable to do so. This witness was not in the business of buying and selling mortgage notes. His testimony does not show whether the mortgage notes he tried to sell were similar to those of the petitioner, nor does it show why he was unable to sell the notes. We do not think the testimony of this witness is indicative of a lack of fair market value for the notes held by the petitioner.

By contending that the notes had no fair market value at the time of their receipt the petitioner assumes the burden of establishing such contention. We can not take judicial notice of whether the notes had a market value. Nor do we consider the fact that the petitioner himself failed to sell or secure a loan thereon from a particular bank as having any weight. There may have been other reasons aside from the marketability of the notes which prevented the particular bank from accepting them. No witness testified that there was no market for such notes. In our opinion the evidence does not sustain the petitioner's contention. The petitioner not having established any lesser value or shown by a preponderance of the evidence that these notes had no fair market value, we must affirm the respondent's determination.

In determining the tax on the petitioner's profit from the sale of the orange grove to the corporation the respondent computed the tax under the capital gain provisions of the statute. In his answer to the amended petition he alleges that the tax should be computed at normal and surtax rates instead of in the manner in which he computed it, for the reason that the petitioner acquired and held the

property for the purpose of future sale at a profit and not as an investment. The petitioner denies that the profit from the sale should be computed at normal and surtax rates.

Section 208 (a) of the Revenue Act of 1926 provides in part as follows:

For the purposes of this title—

(1) The term "capital gain" means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921;

\* \* \* \* \* \* \*

(8) The term "capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business.

Since real estate is not the kind of property properly to be included in the petitioner's inventory, *Atlantic Coast Realty Co.*, 11 B. T. A. 416; *Albert F. Keeney*, 17 B. T. A. 560, the question to be determined is whether the real estate here involved constituted property held by the petitioner primarily for sale in the course of his trade or business.

The petitioner's testimony shows that he went to Florida in the latter part of 1918 and that two months afterwards he went into the business of a dealer in real estate. In 1919 he purchased the orange grove solely for the purpose of resale at a profit. In 1925, while carrying on his business as a real estate dealer in addition to other activities, he was able to sell the property. From the facts before us we think the property was held by the petitioner primarily for sale in the course of his business within the meaning of the statute. The petitioner is therefore not entitled to the benefit of the capital gain provisions of the statute. See *John M. Welch, Sr.*, 19 B. T. A. 394; *John S. Phipps et al.*, 19 B. T. A. 1293.

The petitioner contends that the respondent erred in failing to allow as an expense a deduction of $12,500 representing the commission paid to Rose for purchasing certain real estate. The petitioner testified that the property was bought and held by him solely for the purpose of resale at a profit in his business as a real estate dealer. We have held that commissions paid on the purchase of securities constitute part of the cost of the securities and are not deductible as an expense even though the purchaser was engaged in the business of buying, holding and selling securities. *Marjorie Post Hutton*, 12 B. T. A. 265; affd., 39 Fed. (2d) 459. We think our decision in the *Hutton* case is applicable and controlling here. The contention of the petitioner is therefore denied.

*Judgment will be entered under Rule 50.*