J. A. DART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. J. A. DART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56704, 56705. Promulgated October 20, 1933.

*Frank J. Albus, Esq.*, for the petitioners.
*John D. Kiley, Esq.*, for the respondent.

128

OPINION.

TRAMMELL: The petitioners do not question the correctness of the action of the respondent in including in taxable income the amount of interest credited to their short accounts, but contend that the amounts of the charges made against their accounts as the equivalent of dividends paid on stock which they had sold short should be allowed as ordinary and necessary expenses and for the purpose of determining the profit from the short sales should not be added to the cost of stock when purchased to complete such short sales. The respondent contends that a short sale of stock is not a completed transaction until shares of the same kind as those sold are purchased by the seller to cover the transaction and that the amounts charged against the petitioners' accounts as the equivalent of dividends paid on the stock they had sold short were not ordinary and necessary business expenses, but constituted a part of the cost of the stock purchased to cover the transaction and therefore were not deductible until the short sales became completed transactions. He also makes reference to I.T. 1764, C.B. II-2, p. 22, and S.M. 4281, C.B. IV-2, p. 187, to show that his contention is in conformity with his prior rulings on the question.

In *Provost* v. *United States*, 269 U.S. 443, referred to in the findings of fact, the question involved was whether transfers of shares of corporate stock involved in "loan" and "return" transactions

made in accordance with the rules and practice of the New York Stock Exchange were taxable transfers within the meaning of the stamp tax provisions of the Revenue Acts of 1917 and 1918. The court there considered the nature and procedure involved in a short sale and said:

The loan of stock is usually, though not necessarily, incidental to a "short Sale." As the phrase indicates, a short sale is a contract for the sale of shares which the seller does not own or the certificates for which are not within his control so as to be available for delivery at the time when, under the rules of the Exchange, delivery must be made. Under the rules of the New York Stock Exchange, applicable so far as the facts of this case are concerned, a broker who sells stock is required to make delivery of the certificates on the next business day. If he does not have them available, he must procure them for the purpose of making delivery. This he may do by purchasing or borrow-ing the required shares, delivery of the certificates to be made to the broker to whom he has already contracted to sell.

If he borrows them, he deposits with the lending broker their full market price; and until the loan is returned, this deposit is maintained, by means of daily payments back and forth between the borrower and the lender, at the varying level of the market value of the shares loaned. The lender, who thus receives in money the full market value of the shares—much more than he would ordinarily realize by pledging them—usually pays interest on the money so received, at the current rate for demand loans. But the rate of interest is a matter of negotiation and agreement, and the deposit may, on occasion, carry no interest, or the borrower of the stock may pay a premium when the stock is greatly in demand.

During the continuance of the loan the borrowing broker is bound by the loan contract to give the lender all the benefits and the lender is bound to assume all the burdens incident to ownership of the stock which is the subject of the transaction, as though the lender had retained the stock. The borrower must accordingly credit the lender with the amount of any dividends paid upon the stock while the loan continues and the lender must assume or pay to the borrower the amount of any assessments upon the stock. The lender of the stock, concurrently with the receipt of the deposit, delivers to the borrower the certificates of the stock lent * * *. The stock thus borrowed then becomes available for delivery on the short sale.

The original short sale is thus completed and there remains only the obliga-tion of the borrowing broker, terminable on demand, either by the borrower or the lender, to return the stock borrowed on repayment to him of his cash deposit, and the obligation of the lender to repay the deposit, with interest as agreed. The stock for this purpose, if not provided by the customer, must be obtained by borrowing stock of like kind and amount from other brokers, or by purchasing the stock in the open market and charging the customer for whose account the sale was originally made, with the purchase price. In that case the short sale transaction and the borrowing transaction as well are brought to their conclusion by the actual purchase of stock of which the customer was short at the time when the sale was made and the delivery of the stock, thus purchased, to the lender. * * *

It will be observed that the completed short sale transaction usually involves four separate steps in each of which there is either a sale or a complete transfer of all the legal elements of ownership. These are (1) the sale of

the stock by the person effecting the short sale, followed by the transfer and delivery of the certificates for the borrowed stock to the purchaser's broker; (2) the transfer of the shares from the lender to the borrower, who uses them for delivery on the customer's short sale; (3) the purchase by the borrowing broker of the stock required to repay the loan; and (4) the transfer and delivery by the borrower to the lender of the certificates for the purchased shares to replace the shares borrowed. Each transfer may be accompanied by a physical delivery of certificates of the stock transferred; but the intermediate deliveries in (2) and (3) are usually eliminated by use of the Stock Exchange Clearing House.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

But the borrower of stock holds nothing for account of the lender. The procedure adopted and the obligations incurred in effecting a loan of stock and its delivery upon a short sale neither contemplate nor admit of the retention by either the borrower or the lender of any of the incidents of ownership in the stock loaned. *The seller having contracted to sell securities which he does not own, is under the necessity of acquiring dominion over stock of the kind and amount which he has sold, with unrestricted power of disposition of it in order that he may fulfill his contract.* Whether his broker acquires the stock by purchase or by giving to the lender of it the market value of the stock plus his personal obligation to acquire and return to the lender, on demand, a like kind and amount of stock, the legal effect of the transfer is the same. Upon the physical delivery of the certificates of stock by the lender, with the full recognition of the right and authority of the borrower to appropriate them to his short sale contract, and their receipt by the purchaser, all the incidents of ownership in the stock pass to him.

When the transaction is thus completed, neither the lender nor the borrower retains any interest in the stock which is the subject matter of the transaction and which has passed to and become the property of the purchaser. Neither the borrower nor the lender has the status of a stockholder of the corporation whose stock was dealt in, nor any legal relationship to it. Unlike the pledgee of stock who must have specific stock available for the pledgor on payment of his loan, the borrower of stock has no interest in the stock nor the right to demand it from any other. For that reason he can be neither a pledgee, trustee nor bailee for the lender, and he is not one "with whom stock has been deposited as collateral security for money loaned." *For the incidents of ownership, the lender has substituted the personal obligation, wholly contractual, of the borrower to restore him, on demand, to the economic position in which he would have been, as owner of the stock, had the loan transaction not been entered into.*

When the borrower returns the borrowed stock, he acquires it by purchase or by borrowing again and in the process acquires and transfers to the lender all the incidents of legal ownership in securities which neither possessed before.

We therefore conclude that both the loan of stock and the return of borrowed stock involve "transfers of legal title to shares of stock" within the express terms of the statute; \* \* \*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

We therefore conclude that while there is no indication of a purpose to impose a discriminatory tax upon short sales or transactions necessarily involved in short sales, there was a general purpose to tax all transfers of legal ownership of shares of stock which includes those made necessary in order to complete a short sale. [Italics ours.]

From the foregoing it is clear that when a person makes a short sale he is under the necessity of acquiring dominion over stock of the kind and in the amount which he has sold, together with the unrestricted power of disposition of it, in order that he may fulfill his contract by transferring the legal title of such stock to the purchaser under the short sale. This necessity must be met irrespective of whether the broker is to furnish the stock from a lot which he owns, or is to purchase or borrow it from another. Regardless of the source from which the stock is to be obtained the short seller, by directing that the short sale be made, has assumed the financial responsibilities incident to effecting the sale. One of the responsibilities is to make payment to the broker through whom the short sale is made, either for the benefit of that broker or for another from whom the stock was borrowed, of an amount equal to the amount of any dividends paid on the stock during the time the loan continues, or, in other words, until the short sale is completed by a covering purchase by the short seller. In making the covering purchase the short seller does so for the purpose of acquiring dominion over the stock and the unrestricted power to transfer the legal title therein to the party who furnished the stock necessary for effecting the short sale. The petitioners do not contend, nor do we think it can be successfully contended, that the amount paid by the short seller for the stock acquired by his covering purchase is not an element entering into cost in. determining the profit or loss from the short sale. Cf. *Osgood Land & Livestock Co.*, 22 B.T.A. 387. As indicated above, the amount paid by the short seller on account of dividends paid during the time the short sale is uncompleted is an obligation assumed incident to the acquisition and transmittal of the legal title to the stock delivered to the purchaser under the short sale. The amount being paid for this purpose we think is just as much a part of the cost basis to be used in determining the profit or loss from the short sale when completed as the expenditure made in the covering purchase. Amounts paid in connection with the acquisition of property do not come within the classification of ordinary and necessary business expenses, but are capital expenditures, properly to be considered as items of cost of the property acquired. See *R. E. Thompson*, 7 B.T.A. 391; *Marjorie Post Hutton*, 12 B.T.A. 265; affd., 39 Fed. (2d) 459; *I. N. Burman*, 23 B.T.A. 639.

Should we be in error in taking the foregoing view of the matter, and if the short sales are to be considered purely as sales and in no wise involving the acquisition of property and the amounts here in controversy are to be considered solely as expenditures incurred by the petitioners in effecting such sales, the position of the petitioners is not improved. Expenditures incurred in effecting the sale of se-

curities by one not a dealer are not deductible as ordinary and necessary expenses, but operate to reduce the profit upon disposition of the securities. *Florence G. Baldwin*, 23 B.T.A. 512. While the purchases and sales of securities by the petitioners during the taxable years involved constituted a business carried on by them and if they had sustained losses on such transactions in excess of their income from other sources such amounts undoubtedly would have constituted net losses which could have been carried forward to subsequent years, *Ignaz Schwinn*, 9 B.T.A. 1304; *William A. Hodgson*, 24 B.T.A. 256, we do not think such transactions would entitle them to classification as dealers in securities. In holding that a taxpayer was a dealer in securities the court, in *Harriman Natl Bank* v. *Commissioner*, 43 Fed. (2d) 950, said:

> The foregoing summary of the testimony suffices, in our opinion to make a prima facie showing that the bank was a dealer in securities within the meaning of the Treasury Regulations. It shows that it was "a merchant of securities," that is, "one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived"; that it was "regularly engaged in the purchase of securities and their resale to customers," having a separate department for such purchases and sales and an established place of business.

There is nothing in the record of the instant proceedings to indicate that the petitioners were, as merchants, buying securities and selling them to customers or were acting as brokers. On the contrary the evidence indicates that they bought, sold or held securities on their own account for investment or speculation. A taxpayer whose business is buying, selling and dealing in securities solely for its own account and who makes no purchases or sales of securities for the account of customers is not a dealer in securities. *Adirondack Securities Corp.*, 23 B.T.A. 61. In that case we said:

> The evidence in this proceeding discloses that the petitioner did not operate as a broker and there is no evidence that it regularly sold securities to customers. The proof clearly shows, however, that the petitioner bought and sold securities solely for its own account. Article 1615 of Regulations 69 defines a dealer in securities whose income may be determined by the use of inventories as an individual, partnership, or corporation regularly engaged in the purchase of securities for their resale to customers. Obviously, the petitioner does not come within this definition, but, on the contrary, it appears that the petitioner bought, sold or held securities for investment or speculation. Therefore, it is not entitled, under section 205 of the Revenue Act of 1926 and article 1615 of Regulations 69, to deduct from income an inventory loss.

In the light of the foregoing we do not think it can be said that the petitioners were dealers in securities during the taxable years involved. Consequently, if the amounts here in controversy be considered solely as expenditures incurred in effecting the sale of securities, they are not deductible as ordinary and necessary expenses, but

operate to reduce the profit from the disposition of the securities. *Florence G. Baldwin, supra.*

In view of the foregoing we are of the opinion that the action of the respondent here complained of is correct and should be sustained. See *Gladys G. Terbell et al., Executors,* 29 B.T.A. 44.

The petitioners urge that to include in taxable income, as the respondent has done, the amounts received by them as interest in connection with their short sales and not allow them to deduct the amounts here sought with respect to dividends involved in such sales would be inconsistent and would distort their income. This contention we think overlooks the fact that while the interest arose in connection with short sale transactions it resulted directly and primarily from the use of funds of the petitioners and that in accordance with the provisions of the statutes it is to be included in taxable income for the year in which received or made available to them.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*