Gene Bass v. Commissioner.
Bass v. Commissioner
Docket No. 15899.
United States Tax Court
1948 Tax Ct. Memo LEXIS 109; 7 T.C.M. (CCH) 586; T.C.M. (RIA) 48156; August 24, 1948
*109 Petitioner and one Cates, doing business as partners, on June 1, 1941, sold for purchaser's notes aggregating $35,000 payable at the rate of $700 per month, certain equipment and territorial rights to one Cannon, retaining as security a lien on the equipment sold. $4,900 of the notes were paid in 1941 and all notes were paid as they matured. The notes were not shown on the partnership books as "notes receivable" but the book value to the partnership of the equipment sold Cannon was carried in the equipment account. Respondent determined that additional gain of $20,047.98 resulted to the partnership from the sale and taxed one-half thereof to petitioner. Held, petitioner failed to show error in respondent's determination. At the end of 1941 petitioner sold his half interest in the partnership, excepting specified partnership assets, to his partner, Cates, at the book value as of December 31, 1941, of the part sold. Petitioner claims that by this sale, the Cannon notes not being shown in book value as notes receivable, he sustained a deductible loss in 1941 to the extent of one-half of the difference between the unpaid Cannon notes and the value at which the assets sold were carried *110 on the books. Held, under the facts, petitioner not entitled to the deduction claimed. Clyde W. Chapman, Esq., for the petitioner. Newman A. Townsend, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The respondent determined a deficiency in income tax of the petitioner for 1941 in the amount of $4,918.98. The petitioner challenges the respondent's determination that the petitioner's distributive share of the income of Albany Amusement Company, a partnership, should be increased by $11,499.05. An amendment to the petition asks allowance of a loss said to have been sustained by petitioner in 1941 upon dissolution of the partnership. Findings of Fact During the calendar year 1941 the *111 petitioner was a resident of Albany, Georgia. His income tax return for that year was filed on the cash receipts and disbursements basis with the collector of internal revenue for the district of Georgia. Throughout the year 1941 Albany Amusement Company was a partnership in which the petitioner and R. R. Cates each owned a 50 per cent interest. This partnership operated cigarette-vending machines, pinball machines and coin-operated music machines in the territory adjacent to Albany and Americus, Georgia. For several years prior to June 1, 1941, Frank Cannon was a salaried employee of the partnership. His duties consisted of making collections and looking after the equipment located in and near Americus. He began working for the partnership shortly after finishing school, and was regarded as a capable, honest and trusted employee by Cates and petitioner. He had spent some time in New Mexico on account of his health and had a lung impairment. On June 1, 1941, the company sold the "Americus territory" and the equipment located therein to Cannon for $35,000. In payment of the purchase price Cannon executed and delivered to the partnership a series of 100 promissory notes in the *112 sum of $350 each, payable on the first and fifteenth of each month, beginning June 1, 1941. These notes were secured by a lien upon the music machines and other equipment located in the Americus territory. Cannon paid each of the 100 notes on or before maturity. A total of $4,900 was paid during 1941 and notes with a face value of $30,100 were unpaid, but not yet due, on December 31, 1941. The books of account of the partnership were kept on the accrual basis. The partnership filed a return of income for the calendar year 1941 on the accrual basis. This return disclosed a net income of $33,576.97. This included a profit of approximately $1,600 as gain on collections on account of the transaction with Cannon. On or about December 8, 1941, petitioner and Cates executed an agreement which read in part as follows: "Georgia, Dougherty County. "This memoranda agreement made and entered into this 8th day of December, 1941, between R. R. Cates, hereinafter referred to as party of the first part, and Gene Bass, hereinafter referred to as party of the second part, both parties being of said State and County, is to witnesseth: "That whereas said parties have been and are now doing *113 business and operating under the name and style of the Albany Amusement Company, the same being a partnership; * * *
"And whereas the party of the second part desires to retire from said partnership and to sell his interest therein, as well as his interest in the trade name and good will of said business, excepting only the real-estate located in Dougherty County, Georgia and excepting his interest in certain personal property located and operated in a subdivision adjacent to the City of Albany, Georgia, and known as Ragsdale; "And whereas party of the first part desires to purchase the aforesaid interest of party of the second part; "And whereas both parties desire the sale to become effective beginning with the first day of January, 1942; "Now, therefore, in consideration of the premises and the sum of $5.00 in hand paid by party of the first part to party of the second part, the receipt of which is hereby acknowledged, the party of the second part agrees to sell to party of the first part his interest aforesaid in said partnership, and party of the first part agrees to purchase the interest of party of the second part upon the terms and conditions as hereinafter set *114 out, and hereby mutually agreed upon: * * *
"Party of the first part is to pay to party of the second part as part of the purchase price for his interest aforesaid and actual book value of the interest purchased as shown by the partnership books to be audited as of date of December 31, 1941; such valuation and balance of purchase price to be paid as follows: "Upon the determination of the balance of the purchase price, by audit as aforesaid, party of the first part is to pay to party of the second part the sum of $5,000.00 in cash, and to execute a series of notes in the principal sum of $500.00 each, except the last note, covering the balance of the purchase price, one note to become due each month after date, said notes bearing interest from maturity at the rate of 5% per annum; and said notes to be secured by phonographs to be taken at their book value and to be properly described in a mortgage or bill of sale to secure debt. * * *
"Each of the parties hereto agree that this memoranda contract is binding upon them, their heirs and assigns, and that final contract, deeds, bills of sale, and any and all other necessary papers will be drawn, signed and delivered by *115 each party as may be necessary to carry out the terms of this agreement as soon as the audit of the partnership books have been made and completed as hereinbefore agreed and provided for." Pursuant to this agreement and subsequent to January 1, 1942, the books of account of the partnership were audited by John W. Crouch, a public accountant. Acting upon instructions received from petitioner and Cates, Crouch prepared a balance sheet as of December 31, 1941, upon which the unpaid Cannon notes were not shown as "notes receivable," but the equipment and machinery sold to Cannon were included in the machinery and equipment account. This equipment and machinery was assigned a value of approximately $7,800, which was equivalent to the "book value" or unrecovered cost thereof. The balance sheet thus prepared read as follows: ASSETS
Current Assets: Cash in Banks
$ 1,227.08
Accounts Receivable
3,389.94
Notes Receivable
Inventory - December 31, 1941
14,821.79
Total Current Assets
$ 19,438.81
Fixed Assets: Equipment
$76,924.63
Trucks
7,823.04
Furniture and Fixtures
1,626.00
Lease Improvements
713.97
Rental Property
19,505.20
Land
2,328.30
Total Fixed Assets
108,921.14
Total Assets
$128,359.95
LIABILITIES AND NET WORTH
Current Liabilities: Accounts Payable
$13,502.00
Notes Payable
13,223.55
Albany Exchange National Bank Overdraft
4,219.63
Accrued Taxes
4,730.00
Total Current Liabilities
$ 35,675.18
NET WORTH
Gene Bass - Bal. 1/1/41
$41,495.82
Addition for year per Exhibit "B"
4,848.19
$46,344.01
R. R. Cates - Bal. 1/1/41
$41,492.57
Addition for year per Exhibit "B"
4,848.19
46,340.76
Total Net Worth
$ 92,684.77
Total Liabilities and Net Worth
$128,359.95
*116 After the audit was completed and subsequent to January 1, 1942, petitioner executed and delivered to Cates a bill of sale which reads in part as follows: "GEORGIA, DOUGHERTY COUNTY. "This indenture made this first day of January, 1942, between Gene Bass of the County of Dougherty and State of Georgia of the first part, and R. R. Cates of the County of Dougherty and State of Georgia of the second part, is to witnesseth: "That whereas said parties entered into a memoranda agreement on the 8th day of December, 1941, which agreement is in writing and recorded in the office of the Clerk of the Superior Court of Dougherty County, Georgia in Deed Book 89, page 256, and reference to same is hereby made and the terms therein contained are hereby specifically made a part of this instrument; "Now, therefore, the said party of the first part for and in consideration of the sum of Five Thousand Dollars cash in hand paid, and the sum of $24,690.60 secured by notes and a certain bill of sale to secure debt, the receipt of all of which is hereby acknowledged, has bargained and sold, and does hereby bargain, sell, transfer, assign, convey and deliver unto the said party of the second part *117 all of his right, title, equity and interest in and to the partnership business and partnership assets heretofore conducted under the name and style of Albany Amusement Company, including the trade name of "Albany Amusement Company," the good will of said business, and all of the personal property and chattels belonging to said business, including real estate leases, notes, accounts, mortgages or other forms of indebtedness which are payable to the Albany Amusement Company, save and except party of the first part reserves and exempts from this conveyance and sale his one-half undivided interest in and to all of the real estate in Dougherty County, Georgia, which is owned by said parties jointly, and the income therefrom, and party of the first part reserves unto himself and exempts from this sale his one-half undivided interest in all coin operated machines located in Ragsdale Subdivision, except cigarette Vending Machines, which are hereby included in the sale to party of the second part." In settlement of the partnership affairs Cates paid petitioner a total of $32,640.60. The sum of $7,950 was paid immediately in cash or its equivalent and Cates executed 50 promissory notes totaling *118 $24,690.60 for the balance. Interest was payable upon the notes after maturity, and all have now been paid. In this transaction the petitioner accepted some of the Cannon notes, bearing Cates' endorsement, as the equivalent of cash. He refused to take the notes without Cates' endorsement. In addition to the profit of some $1,600 on the notes paid by Cannon in 1941 reported on its 1941 tax return, the partnership realized gain in the amount of $20,047.98 from the sale of the equipment and Americus territory to Cannon on June 1, 1941. Opinion The petitioner and R. R. Cates, as equal partners, were doing business as Albany Amusement Company. In the notice of deficiency the adjustments made by respondent were explained as follows: "Your income for the year 1941 has been increased by the amount of $11,499.05 representing your share of the additional unreported income of Albany Amusement Company, a partnership. Sections 22 (a) and 181 (c) of the Internal Revenue Code. The ordinary income of the Albany Amusement Company for the year 1941 has been increased by the amount of $22,998.09 representing additional profit on sale of music machines and equipment of $20,047.98 *119 and the disallowance of deductions claimed for depreciation on the said machines and equipment of $2,950.11. Your fifty per cent interest in the total increase in partnership income is $11,499.05 as stated above." Petitioner concedes the correctness of respondent's action in disallowing the depreciation item of $2,950.11. Petitioner alleges error in respondent's determination that the partnership realized additional profit on sale of music machines and equipment of $20,047.98 upon the sale of a part of its machines and territory to Frank Cannon in June, 1941. The petitioner recognizes that where property is exchanged for notes, income is realized to the extent that the fair market value of the notes exceeds the basis of the property. He contends that Cannon's notes represented little more than a moral obligation of Cannon because of the latter's health and financial condition. Cannon had been to New Mexico for his health, and had a bad lung condition. At the time of the contract the partnership let Cannon have $75 in cash that was in the petty cash fund of the Americus office, as Cannon had no money, he owned doctor's bills and was otherwise in debt. Cates was unable to discount *120 the notes at the Bank of Albany. Cates and petitioner treated the transaction on the partnership books as though the notes were worth no more than the book value of the equipment transferred. The petitioner would not accept them from Cates as cash without Cates' endorsement. The petitioner contends that under these circumstances the notes had little, if any, value in excess of the basis of the property sold to Cannon and pledged as security for the notes. Petitioner further contends that he lost all rights to the balance on the Cannon notes unpaid on December 31, 1941, because in the settlement with Cates pursuant to their agreement of December 8, 1941, the notes were omitted from the balance sheet on which the settlement was based and Cates claimed them as his individual property. Thus, petitioner says, if he realized any gain from the partnership's transaction with Cannon, he lost that amount when he settled with Cates, except for the amount he reported as gain in 1941. The burden of proof is upon the petitioner to show that the notes given by Cannon were worth less than the value ascribed to them by the respondent. Negotiable notes of a responsible and solvent maker are properly *121 included in assets as cash at their face value. Corbett v. Burnet, 50 Fed. (2d) 492, certiorari denied, 284 U.S. 646, affirming 15 B.T.A. 698. Cannon had been employed by the partnership for some years prior to 1941 and was regarded by the partners as a capable, honest and trustworthy employee. He had worked for the partnership in the Americus territory and was in a position to know what return might be expected from it. He contracted to buy a going business with its equipment and the right to the particular territory with whatever good will had been developed there. Evidently he thought it would produce enough to pay off the contract price as well as to support himself in the meantime. His judgment was borne out by subsequent events, as the notes were paid as they became due. The notes were secured by a lien on the equipment sold to Cannon by the partnership. The petitioner has introduced no evidence whatever to show the fair market value of this equipment on the date of sale. Although he states in his brief that the book value of the equipment on that date was $13,293.82, this figure is not in evidence. The book value to the partnership does *122 not establish the fair market value of the property securing the notes. Furthermore, the petitioner gives no consideration to the value, as a going business, of the property, taken together with the territory and the good will already established there. The failure of Cates to discount the notes does not establish that they lacked fair market value. I. N. Burman, 23 B.T.A. 639. In the absence of proof we can not assume that the fair market value of the equipment, territorial rights, and good will was insufficient to assure the ultimate payment of the notes as they became due. The petitioner's evidence falls short of showing that respondent's determination of the value of the notes was erroneous. We must sustain that determination. The partnership having realized a profit as so determined, half of it is taxable to petitioner, even though not distributed to him. Section 182 (c), Internal Revenue Code. At the end of 1941, Cannon had paid $4,900 of the notes he gave and owed $30,100. Petitioner contends that his share of this amount, or $15,050, was lost to him in the settlement he effected with Cates of the partnership affairs. The agreement was made *123 on December 8, 1941. Pursuant to that agreement, the accountant for the partnership prepared a balance sheet for purposes of the settlement which did not show the unpaid notes of Cannon as notes receivable. The accountant said he was instructed by both Cates and petitioner, in preparing the balance sheet, to show the pledged property in the equipment account instead of showing Cannon's notes as assets. Petitioner agreed to the basis of the settlement and did not ask that Cates pay him half of the face value of the unpaid Cannon notes. He accepted instead payment of half the book value of the machines transferred to Cannon. Furthermore, the balance sheet prepared showed petitioner's net interest in the partnership as $46,344.01. Cates paid him in cash and notes $32,640.60 for his interest except in certain items of property. As to those, he retained his undivided half interest, the extent and value of which are undisclosed. Whether he sustained a loss or made a profit on the ultimate disposition of his interests in the partnership could not be known until the disposition of these remaining interests. No deductible loss was sustained in 1941. Decision will be entered for the respondent. *124