T.C. Memo. 1999-7


UNITED STATES TAX COURT


CORBIN WEST LIMITED PARTNERSHIP, CDC EQUITY
CORPORATION, TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2203-97.                 Filed January 15, 1999.


Robert J. Percy, for petitioner.

Andrew R. Ceccherini, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent issued notices of final partnership administrative adjustment (FPAA's) to Corbin West Limited Partnership (Corbin West) for 1990, 1991, 1992, and 1993.[1]

_____

[1] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for our decision are: (1) Whether a note executed by Corbin West should be included in the basis of certain acquired property for purposes of computing depreciation deductions and low-income housing credits, (2) whether Corbin West is entitled to interest deductions for the accrued interest on that note, (3) whether Corbin West is entitled to include an "acquisition fee", a "developer's fee", or a "tax credit guarantee fee" in the basis of certain acquired property or, alternatively, whether Corbin West may currently deduct any of those fees, and (4) whether Corbin West is entitled to amortization expense for a "no negative cash flow guarantee fee" paid.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Corbin West is a TEFRA partnership. At the time of the filing of the petition, its principal place of business was located in Farmington, Connecticut. Corbin West consists of one general partner, CDC Equity Corp. (CDC), and 29 limited partners. CDC is the wholly owned subsidiary of CDC Financial Corp. (Financial).

CDC is the tax matters partner of Corbin West. Pursuant to Rule 240(c), CDC filed a petition requesting a redetermination of respondent's adjustments to partnership items.

I.  Acquisition of the Property

Corbin West was formed to purchase, manage, and syndicate the Corbin West Apartments (the property). From approximately March 17, 1970, until December 23, 1988, Norman Associates (Norman) owned the property.

On December 8, 1987, Corbin West entered into an option agreement (the first option) with Norman to purchase the property for $1,760,000. On or about December 9, 1987, CDC, acting on behalf of Corbin West, applied for a reservation of a Federal low-income housing tax credit relating to the property with the Connecticut Housing Finance Authority (CHFA application). The CHFA application reflected a total acquisition cost of $1,760,000 plus estimated development and/or rehabilitation costs of $1,698,315. Corbin West was unable to obtain the financing required for rehabilitation of the property and allowed the first option to lapse on April 1, 1988.

Corbin West remained interested in obtaining the property. With the help of its attorneys, Corbin West devised a new plan to acquire the property. Under the plan, Norman would sell the property to a charitable organization for a price below an alleged fair market value and take a charitable contribution deduction for the difference between the sale price and the alleged fair market value. The charitable organization in turn would sell the property to Corbin West. Corbin West would reimburse the charitable organization for the cash paid to Norman to acquire the property and execute a promissory note for the

difference between the alleged fair market value and the cash paid (the same amount as Norman's charitable contribution deduction). The so-called bargain sale would be advantageous to Norman because it would provide Norman with a large charitable contribution deduction. The bargain sale would also provide Corbin West a high basis in the property.

On or about November 30, 1988, Financial approached the New Britain Housing Authority (NBHA) and asked if the NBHA would participate in Corbin West's bargain sale plan. The NBHA officials believed this was a strange request but nonetheless agreed to participate. At the NBHA's request, Financial indemnified the NBHA against any and all loss, cost, claim, demand, or damage arising out of or in connection with the NBHA's purchase of the property (hold harmless agreement).

On or about December 23, 1988, the NBHA entered into a purchase and sale agreement with Norman whereby the NBHA was granted the right to acquire the property for $1,808,500. Norman took a charitable contribution deduction for the difference between the alleged fair market value of $3,150,000 and the sale price of $1,808,500 (i.e., $1,341,500). Respondent denied Norman's charitable contribution deduction, and Norman never challenged respondent's determination in court.

On or about December 23, 1988, the NBHA entered into an option agreement (the second option) with Corbin West under which Corbin West acquired the right of the NBHA to purchase the property. Corbin West exercised the second option and purchased

the property from Norman pursuant to the option with the NBHA for $1,808,500.  Corbin West paid the $1,808,500 by assuming the existing first mortgage of $873,000, obtaining a second mortgage of $920,000, and paying the balance from the limited partners' contributions.  Corbin West also gave the NBHA a promissory note (the note) for $1,341,500 (the difference between the alleged fair market value of $3,150,000 and the amount already paid of $1,808,500).

The note was recourse against Corbin West but not against the general partner or any of the limited partners.  The note was not secured by the property.  Interest and principal on the note were not payable until the earlier of the sale of the property or January 1, 2011.  The note was subordinated to repayment of the first and second mortgages, repayment of loans from the general partner plus interest, and repayment of the limited partners' capital contributions and loans plus 8 percent interest.  The NBHA did not record the note as an asset on its financial statements.

On its Federal income tax returns for 1990, 1991, 1992, and 1993, Corbin West included the note in the property's basis for purposes of determining its depreciation deductions and low-income housing credits.  On these returns, Corbin West also claimed accrued interest deductions related to the note of $135,000, $147,492, $160,719, and $175,323, respectively.

II.  Fees Paid

Corbin West paid CDC substantial fees related to the property.  These fees included the following:  (1) An "acquisition fee" of $157,500, (2) a "developer's fee" of $87,213, (3) a "tax credit guarantee fee" of $90,000, and (4) a "no negative cash flow guarantee fee" of $53,000.

Corbin West paid CDC the "tax credit guarantee fee" for CDC's guaranty that the property would be operated in a manner which would comply with the requirements of section 42 and ensure the availability of a low-income housing tax credit.  CDC guaranteed that if the property failed to qualify for the low-income housing tax credit, then CDC would advance Corbin West an amount equal to any loss of credit.  To date, CDC has not made any payments under this provision.

Corbin West paid CDC the "no negative cash flow guarantee fee" for CDC's promise to make loans up to $250,000 to Corbin West to fund any operating deficits that might arise through December 31, 1995.

On its Federal income tax returns for 1990, 1991, 1992, and 1993, Corbin West included the "acquisition fee", the "developers fee", and the "tax credit guarantee fee" in the property's basis. On these returns, Corbin West capitalized the "no negative cash flow guarantee fee" and claimed amortization deductions related to that fee of $7,571, $7,571, $7,571, and $7,574, respectively.

OPINION

I. <u>Inclusion of the Note in the Property's Basis</u>

It is well established that the economic substance of a transaction, rather than its form, controls for Federal tax purposes. <u>Gregory v. Helvering</u>, 293 U.S. 465 (1935). Respondent argues that the note lacks economic substance; therefore, Corbin West cannot include the note in the property's basis for purposes of computing depreciation deductions or low-income housing credits.

Generally, the basis for computing depreciation and the low-income housing credit is the cost of the underlying property. See secs. 42, 167(c), 1011, 1012. "Cost" is the amount paid for the property in cash or other property. Sec. 1.1012-1(a), Income Tax Regs. A promissory note is generally included in that cost. <u>Crane v. Commissioner</u>, 331 U.S. 1 (1947); see <u>Commissioner v. Tufts</u>, 461 U.S. 300 (1983); <u>Estate of Franklin v. Commissioner</u>, 544 F.2d 1045 (9th Cir. 1976), affg. 64 T.C. 752 (1975). To be included in the cost of the property, the promissory note must reflect a genuine debt. See <u>Estate of Franklin v. Commissioner</u>, <u>supra</u> at 1049; <u>Odend'hal v. Commissioner</u>, 80 T.C. 588, 604-605 (1983), affd. on this issue and remanded 748 F.2d 908 (4th Cir. 1984).

Recourse notes are normally included in basis because the taxpayer has a fixed, unconditional obligation to pay, with interest, a specified sum of money. See <u>Waddell v. Commissioner</u>, 86 T.C. 848, 898 (1986), affd. per curiam 841 F.2d 264 (9th Cir.

1988). In deciding whether a recourse note is included in basis, the mere fact that the note is recourse on its face, however, is not determinative. See Roe v. Commissioner, T.C. Memo. 1986-510, affd. per order (8th Cir., Apr. 1, 1988), affd. without published opinion sub nom. Sincleair v. Commissioner, 841 F.2d 394 (5th Cir. 1988). When taking economic realities into account, if a recourse debt has no reasonable likelihood of being paid, then the recourse note lacks economic substance and should not be included in basis. See Rose v. Commissioner, 88 T.C. 386, 421-422 (1987), affd. 868 F.2d 851 (6th Cir. 1989); Waddell v. Commissioner, supra; Bridges v. Commissioner, 39 T.C. 1064, 1077 (1963), affd. 325 F.2d 180 (4th Cir. 1963). In determining whether there is a likelihood of repayment, we look at the facts and circumstances of each case. See Waddell v. Commissioner, supra at 903.

Where the purchase price greatly exceeds the fair market value of the property, courts often find the transaction lacks economic substance. See Rose v. Commissioner, supra at 419-420, 422. Corbin West reported the purchase price of the property as $3,150,000. Respondent argues that the fair market value of the property at the time of Corbin West's acquisition was only $1,808,500; therefore, the purchase price greatly exceeds the fair market value.

In this case, the most significant indicator of the fair market value of the property is the first option entered into by Corbin West and Norman 1 year before the acquisition of the

property through the bargain sale. The first option allowed Corbin West to purchase the property for $1,760,000. The evidence suggests that this price was negotiated at arm's length. It, therefore, appears that the purchase price greatly exceeded the fair market value of the property at the time of Corbin West's acquisition, and the note was unlikely to be repaid from its inception.

Furthermore, the repayment of the note was subordinate to repayment of the following: (1) The existing first mortgage of approximately $873,000, (2) the second mortgage of $920,000, (3) the limited partners' loans of $705,600 plus 8 percent interest, (4) the limited partners' capital contributions of $258,900, and (5) the general partners' loans of $500,000 plus interest. These amounts total $3,257,500.

The preexisting debt on the property and the obligations to the partners already exceeded by a large amount the fair market value of the property at the time of Corbin West's purchase, and, as noted above, the repayment of the note was subordinate to repayment of that debt and those partner obligations. Therefore, there was no reasonable likelihood that the note would be repaid. See Estate of Franklin v. Commissioner, supra; Waddell v. Commissioner, supra.

Additionally, it appears from the record that the property was the sole asset held by Corbin West; therefore, even if Corbin West decided to pay off the note, it is unlikely that Corbin West

would have the financial ability to pay off the note and the interest thereon when due.[2]

In determining the likelihood of repayment of the note, we also focus on the nature of the dealings between the parties. See Rose v. Commissioner, supra at 415-416, 423. The NBHA was chosen by Corbin West to execute its bargain sale plan. The NBHA was not a negotiating party in the transaction. There is no evidence that the NBHA made any independent analysis concerning the fair market value of the property or the likelihood of repayment of the note by Corbin West. The NBHA had nothing at risk in the transaction because Financial gave the NBHA a hold harmless agreement. The NBHA received the note for allowing itself to be used by Corbin West and Norman in their attempt to ensure advantageous tax positions.

Although the subjective intent of the parties to create a genuine debt is not controlling, we note that the NBHA did not treat the note as genuine debt. See Graf v. Commissioner, 80 T.C. 944, 952 (1983); Bridges v. Commissioner, supra at 1077; Roe

---

[2] Petitioner provided expert testimony that the note could be paid off at the end of its term (22 years) because it anticipated 6-percent annual appreciation on the property. Barry J. Cunningham, petitioner's expert, testified that at the end of the note's term the property would be worth approximately $11 million. He also testified that at that time the first and second mortgages and the note could be paid off with approximately $9 million.

Mr. Cunningham, however, did not consider the loans from the general partner or the loans and capital contributions from the limited partners. Petitioner has not shown that the amount remaining after satisfaction of the first and second mortgages and the obligations to the partners would be sufficient to pay off the note.

v. Commissioner, supra. There is no evidence that the NBHA considered the credit rating of Corbin West before agreeing to accept the note. See Capek v. Commissioner, 86 T.C. 14, 48-49 (1986); Burns v. Commissioner, 78 T.C. 185, 212 (1982); Estate of Helliwell v. Commissioner, 77 T.C. 964, 976-977, 987-988 (1981). The NBHA never recorded the note as an asset on its financial statements. At the time of trial, the NBHA could not locate the note. See Patin v. Commissioner, 88 T.C. 1086 (1987), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989). The note was subordinate to repayment of the preexisting debt and the obligations to the partners, which greatly exceeded the property's fair market value at the note's inception. The facts in toto indicate that the NBHA did not expect the note to be repaid and never treated the note as genuine debt.

On the basis of our review of the entire record, we hold that there was no reasonable likelihood that Corbin West would pay off the note; therefore, the note lacks economic substance and is not includable in the property's basis. Accordingly, Corbin West is not entitled to depreciation deductions or low-income housing credits related to the note.

II.  Deductibility of Accrued Interest on the Note

In general, section 163(a) allows a deduction for interest paid or accrued.  For the interest to be deductible, however, the underlying debt must be genuine.  Elliott v. Commissioner, 84 T.C. 227, 244-246 (1985), affd. without published opinion 782 F.2d 1027 (3d Cir. 1986).  When a debt lacks economic reality and is incurred solely to create an income tax deduction, it does not support an interest deduction.  Goldstein v. Commissioner, 364 F.2d 734, 740 (2d Cir. 1966), affg. 44 T.C. 284 (1965).

We have already found that the note lacks economic substance and is not genuine indebtedness.  We therefore conclude that Corbin West is not entitled to interest deductions associated with the note.[3]

III.  The Fees Capitalized Into the Property's Basis

Corbin West paid CDC substantial fees related to the property.  These fees included the following:  (1) An "acquisition fee" of $157,500, (2) a "developer's fee" of $87,213, and (3) a "tax credit guarantee fee" of $90,000.  Corbin West capitalized these fees into the basis of the property for purposes of computing depreciation deductions and low-income housing credits.  In the FPAA's, respondent disallowed the inclusion of these various fees in the property's basis. Petitioner argues that (1) these fees are properly includable in

_____

[3]  The interest deductions claimed by Corbin West were for accrued interest on the note; no interest was ever paid on the note during the years in issue.

the property's basis or, in the alternative, (2) these fees are deductible expenses.  Neither party disputes that these fees were actually paid by Corbin West to CDC.

Under section 1.263(a)-2, Income Tax Regs., acquisition costs of property must be capitalized.  Included as acquisition costs are expenditures that result in the taxpayer's acquisition of a capital asset, such as survey fees, attorney's fees for drafting documents, and real estate commissions.  Godfrey v. Commissioner, 335 F.2d 82 (6th Cir. 1964), affg. T.C. Memo. 1963-1; Burman v. Commissioner, 23 B.T.A. 639 (1931).

A.  "Acquisition Fee" and "Developer's Fee"

Corbin West capitalized $157,500 as an "acquisition fee" and $87,213 as a "developer's fee" into the property's basis. Petitioner presented two exhibits at trial detailing the services performed or to be performed by it for both of these fees.  The services included, among other things, the following:  (1) Arranging for an option to acquire the property, (2) evaluating zoning requirements and ensuring compliance, (3) arranging and evaluating an environmental report relating to the property, and (4) establishing guidelines for compliance with the low-income housing tax credits requirements.

We conclude that the "acquisition fee" and "developer's fee" were incident to Corbin West's acquisition of the property, and they must be considered part of the property's acquisition cost. We therefore conclude that Corbin West is entitled to capitalize

both the "acquisition fee" and "developer's fee" into its basis in the property.

   B.  "Tax Credit Guarantee Fee"

Corbin West also capitalized a "tax credit guarantee fee" of $90,000 into the basis of the property.  This fee was for CDC's guaranty that the property would be operated in a manner that would ensure Corbin West's entitlement to a low-income housing tax credit for the property.  If Corbin West failed to obtain such a credit in any year, CDC guaranteed that it would advance Corbin West an amount equal to the amount of any loss of credit.

Petitioner has failed to demonstrate that this cost is associated with Corbin West's acquisition of the property.  Sec. 1.263(a)-2, Income Tax Regs.  We therefore conclude that Corbin West is not entitled to capitalize the "tax credit guarantee fee" into its basis in the property.

Petitioner alternatively argues that this fee is a deductible expense.  Deductions are a matter of legislative grace, and petitioner has the burden of showing that Corbin West is entitled to any deduction claimed.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Petitioner has failed to cite a Code section or other authority that would permit a deduction for this cost; therefore, petitioner has failed to establish that Corbin West is entitled to such a deduction.

IV.   "No Negative Cash Flow Guarantee Fee"

Corbin West paid CDC a fee that it labeled a "no negative cash flow guarantee fee" in the amount of $53,000.  In exchange for this fee, CDC agreed to make loans to Corbin West in any amount up to $250,000 to fund any operating deficits through December 31, 1995.  Corbin West capitalized this fee and deducted amortization expense related to this fee during the years in issue.  In the FPAA's, respondent disallowed the amortization expense deduction related to this fee.

Petitioner provides no explanation for its treatment of this item and fails to cite any Code section or other authority that would allow its capitalization and amortization of this fee. Rule 142(a); New Colonial Ice Co. v. Helvering, supra.  We therefore conclude that Corbin West is not entitled to any deductions associated with this fee.

To reflect the foregoing,

Decision will be entered

under Rule 155.